UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KeyBank National Association,<br><br>    Plaintiff,<br><br>  -against-<br><br>Franklin Advisers, Inc., *et al.*,<br><br>    Defendants. | Civil Action No. 1:18-cv-03755-RA |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO TRANSFER VENUE

               O'MELVENY & MYERS LLP
               7 Times Square
               New York, New York 10036
               Tel. (212) 326-2000
               Fax (212) 326-2061

               *Attorneys for Defendants Franklin Advisers,*
               *Inc.; Franklin Investors Securities Trust –*
               *Franklin Floating Rate Daily Access Fund;*
               *Franklin Floating Rate Master Trust –*
               *Franklin Floating Rate Master Series;*
               *Franklin Templeton Series II Funds – Franklin*
               *Floating Rate II Fund; Kansas Public*
               *Employees Retirement System; Franklin*
               *Floating Rate Master Trust – Franklin Lower*
               *Tier Floating Rate Fund; Franklin Floating*
               *Rate Master Trust – Franklin Middle Tier*
               *Floating Rate Fund; and Franklin Templeton*
               *Series II Funds – Franklin Upper Tier Floating*
               *Rate Fund*

## TABLE OF CONTENTS

                                                                                                                       **Page**

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 4

       A.     The Appvion Bankruptcy and Original DIP Agreement ........................... 4

       B.     Appvion's Default Under the Original DIP Agreement and
            Approval of the Amended DIP Agreement ............................................... 6

       C.     This Litigation ............................................................................................ 8

ARGUMENT ....................................................................................................................... 9

      I.     JURISDICTION AND VENUE ARE PROPER IN THE DISTRICT OF
           DELAWARE ..................................................................................................... 10

     II.     TRANSFER OF THESE ACTIONS TO THE DELAWARE
           BANKRUPTCY COURT IS IN THE INTERESTS OF JUSTICE...................... 11

    III.    LITIGATING THESE CASES IN DELAWARE IS MORE
           CONVENIENT FOR THE PARTIES ................................................................ 14

CONCLUSION .................................................................................................................. 16

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Baker v. Simpson*,
    613 F.3d 346 (2d Cir. 2010) .................................................................................................. 11

*CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*,
    396 B.R. 602 (S.D.N.Y. 2008) ............................................................................................... 12

*Del. Trust Co. v. Wilmington Trust, N.A.*,
    534 B.R. 500, (S.D.N.Y. 2015) ............................................................................ 10, 11, 12, 14

*In re Appvion, Inc.*,
    No. 17-12082 (Bankr. D. Del. Oct. 3, 2017) ................................................................ 4, 5, 7, 8

*In re Ben Cooper, Inc.*,
    896 F.2d 1394 (2d Cir. 1990) ................................................................................................ 11

*In re Cuyahoga Equip. Corp.*,
    980 F.2d 110 (2d Cir. 1992) .................................................................................................. 12

*In re Housecraft Indus. USA, Inc.*,
    310 F.3d 64 (2d Cir. 2002) .................................................................................................... 11

*In re Quigley Co., Inc.*,
    676 F.3d 45 (2d Cir. 2012) .................................................................................................... 11

*In re U.S. Lines, Inc.*,
    197 F.3d 631 (2d Cir. 1999) .................................................................................................. 11

*Iragorri v. United Techs. Corp.*,
    274 F.3d 65 (2d Cir. 2001) .................................................................................................... 15

*JPMorgan Chase Bank, N.A. v. Coleman-Toll Ltd. P'ship*,
    2009 WL 1457158 (S.D.N.Y. May 26, 2009) ................................................................. 11, 12

*Lothian Cassidy LLC v. Ransom*,
    428 B.R. 555 (E.D.N.Y. 2010) ........................................................................................ 13, 15

*Renaissance Cosmetics v. Dev. Specialists Inc.*,
    277 B.R. 5 (S.D.N.Y. 2002) .................................................................................................. 15

*Winstar Holdings, LLC v. Blackstone Grp., L.P.*,
    2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) ....................................................................... 15

*Wyndham Assocs. v. Bintliff*,
    398 F.2d. 614 (2d Cir. 1968) ................................................................................................. 12

# TABLE OF AUTHORITIES

**Page**

**STATUTES**

11 U.S.C. § 105 ............................................................................................................................. 7

11 U.S.C. § 361 ............................................................................................................................. 7

11 U.S.C. § 362 ............................................................................................................................. 7

11 U.S.C. § 363 ............................................................................................................................. 7

11 U.S.C. § 364 .................................................................................................................... 1, 7, 12

28 U.S.C. § 1334(b) ................................................................................................................. 2, 10

28 U.S.C. § 1404(a) ................................................................................................................. 9, 15

28 U.S.C. § 1406 ......................................................................................................................... 15

28 U.S.C. § 1409 ......................................................................................................................... 10

28 U.S.C. § 1412 .................................................................................................................. 1, 9, 15

**OTHER AUTHORITIES**

Amended Standing Order of Reference (D. Del. Feb. 29, 2012) ................................................... 9

Defendants[1] move under 28 U.S.C. § 1412 to transfer this action and the related action, *Fifth Third Bank v. Franklin Advisers, Inc., et al.*, No. 1:18-cv-03762-RA, to the United States District Court for the District of Delaware, so that they can be referred to the United States Bankruptcy Court for the District of Delaware, where related bankruptcy proceedings are ongoing.

## PRELIMINARY STATEMENT

Just as these actions belong in federal court rather than state court because of their inextricable entwinement with the pending bankruptcy cases of Appvion, Inc. (together with certain of its affiliates, "**Appvion**" or the "**Debtors**"),[2] they belong in the District of Delaware where the Debtors' bankruptcy cases are pending rather than in this district. As explained below, these actions easily meet every relevant standard for venue transfer under federal law.

As explained in the removal petitions, these cases exist only because of Appvion's bankruptcy. When Appvion filed for bankruptcy, it required debtor-in-possession financing (also referred to as "DIP financing") to continue operating in chapter 11. The parties here were lenders[3] under Appvion's original DIP financing agreement that the Delaware bankruptcy court

---

[1] "**Defendants**" are Franklin Advisers, Inc.; Franklin Investors Securities Trust – Franklin Floating Rate Daily Access Fund; Franklin Floating Rate Master Trust – Franklin Floating Rate Master Series; Franklin Templeton Series II Funds – Franklin Floating Rate II Fund; Kansas Public Employees Retirement System; Franklin Floating Rate Master Trust – Franklin Lower Tier Floating Rate Fund; Franklin Floating Rate Master Trust – Franklin Middle Tier Floating Rate Fund; and Franklin Templeton Series II Funds – Franklin Upper Tier Floating Rate Fund.

[2] *See* Notice of Removal (KeyBank) [Dkt. No. 1]; Notice of Removal (Fifth Third) [Dkt. No. 1]; *see also In re Appvion, Inc.*, No. 17-12082 (Bankr. D. Del.).

[3] The only parties who were not lenders under Appvion's original DIP financing agreement are Franklin Advisers, Inc. and Franklin Templeton Series II Funds – Franklin Upper Tier Floating Rate Fund.

approved under Bankruptcy Code section 364.[4] Plaintiffs KeyBank National Association ("**KeyBank**") and Fifth Third Bank ("**Fifth Third**") (collectively, "**Plaintiffs**") complain that Defendants breached that original DIP financing agreement by entering into an amended DIP financing agreement with Appvion that Plaintiffs believe treat their claims less favorably. Plaintiffs objected to the amended DIP financing on that ground, but the bankruptcy court approved it over their objections.  Unhappy with that result, Plaintiffs filed these suits.  These cases therefore only exist because Appvion filed for bankruptcy, required DIP financing to continue operating in chapter 11, and Plaintiffs do not like their treatment in Appvion's bankruptcy case.  Plaintiffs' meritless breach of contract theories can only be evaluated by the terms of the DIP financing agreements and the bankruptcy court orders approving them.  The Delaware bankruptcy court is the correct court to undertake that evaluation.  This Court should therefore transfer these cases to the District of Delaware so it can refer them to the Delaware bankruptcy court, where these actions should have been initiated in the first place.

Under section 1412, a court may transfer venue of a proceeding to a district in which the case could have been commenced, if transfer is in the interests of justice or for the convenience of the parties.  These cases unquestionably could have been commenced in the District Court of Delaware because, as demonstrated in Defendants' Notices of Removal, they "arise in" a case under title 11, "arise under" the Bankruptcy Code, and are "related to" a case under title 11. *See* 28 U.S.C. § 1334(b); Notice of Removal (KeyBank) [Dkt. No. 1]; Notice of Removal (Fifth Third) [Dkt. No. 1].  Further, transferring venue to the District of Delaware, and ultimately to the Delaware bankruptcy court, would serve the interests of justice and be more convenient for the parties.

---

[4] Bankruptcy Code section 364 provides the mechanism whereby a debtor-in-possession can obtain post-petition financing.  *See* 11 U.S.C. § 364.

*First*, transferring venue serves the interests of justice by promoting the strong federal policies of centralizing bankruptcy-related litigation and conserving judicial resources. The relevant contracts were entered into in Appvion's bankruptcy pursuant to specific federal statutes governing DIP financing and involve concepts that only exist in bankruptcy. The Delaware bankruptcy court already knows the issues raised in these cases, having presided over Appvion's bankruptcy case for seven months and overseen several contested hearings where Plaintiffs raised—and lost—arguments that overlap with their claims. Moreover, resolution of Plaintiffs' claims will require the interpretation and enforcement of the bankruptcy court orders approving both agreements at issue; no court is better suited to interpret those orders than the one that approved them. These factors all show that the Delaware bankruptcy court is best positioned to resolve these actions efficiently and economically.

*Second*, adjudicating these disputes in the Delaware bankruptcy court is more convenient for the parties. No party is located in New York, and all are actively involved in Appvion's bankruptcy proceedings in Delaware. Moreover, Plaintiffs have acknowledged this case belongs in Delaware: they agreed to a forum selection clause providing that disputes arising out of or relating to the DIP financing agreements would be litigated in the Delaware bankruptcy court if, as here, that court has subject matter jurisdiction. The Court should hold Plaintiffs to their bargain.

For these reasons, and as explained in detail below, these cases should be transferred to the Delaware bankruptcy court.

# FACTUAL BACKGROUND[5]

### A.     The Appvion Bankruptcy and Original DIP Agreement

On October 1, 2017, Appvion filed for bankruptcy under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  (KeyBank Compl. ¶ 19; Fifth Third Compl. ¶ 19.)  When Appvion filed for bankruptcy, it was a party to a $253.3 million first lien loan facility (the "**Prepetition Loan Facility**") with KeyBank, Fifth Third, and the Prepetition Franklin Lenders[6] (who are among the Defendants).  (KeyBank Compl. ¶¶ 17–18; Fifth Third Compl. ¶¶ 17–18.)  The Prepetition Franklin Lenders held a majority of the debt issued under that facility.  *See* Shamah Decl. Ex. A at 54:11–55:4 (Hr'g Tr. Excerpt, *In re Appvion, Inc.*, No. 17-12082 (Bankr. D. Del. Oct. 3, 2017)).

At the outset of its bankruptcy proceedings, Appvion sought bankruptcy court approval of DIP financing (the "**Original DIP Agreement**") that would replace the Prepetition Loan Facility and create a new loan facility consisting of (i) approximately $240 million that would refinance (i.e., "roll up") the Prepetition Loan Facility, including the loans held by Plaintiffs and the Prepetition Franklin Lenders (the "**Roll-Up Loans**")[7] and (ii) an additional $85 million in

---

[5] Facts in this background drawn from the KeyBank and Fifth Third complaints are assumed true for purposes of this filing only.  Exhibits are attached to the Declaration of Daniel S. Shamah in Support of Defendants' Motion to Transfer Venue ("Shamah Decl.").

[6] The "**Prepetition Franklin Lenders**" are Defendants Franklin Investors Securities Trust – Franklin Floating Rate Daily Access Fund; Franklin Floating Rate Master Trust – Franklin Floating Rate Master Series; Franklin Templeton Series II Funds – Franklin Floating Rate II Fund; Kansas Public Employees Retirement System; Franklin Floating Rate Master Trust – Franklin Lower Tier Floating Rate Fund; Franklin Floating Rate Master Trust – Franklin Middle Tier Floating Rate Fund; and Franklin Templeton Series II Funds – Franklin Upper Tier Floating Rate Fund.

[7] When a debtor-in-possession requires additional postpetition financing from a prepetition lender, the lender will generally require the debtor-in-possession to enhance the security of the prepetition debt.  One mechanism for doing so is for the lender to provide sufficient postpetition funds to "pay off the prepetition loan . . . in a 'full' or 'complete' roll-up, immediately

- 4 -

new loans to Appvion (the "**Original DIP New Money Loans**") that the DIP Franklin Lenders[8] would guarantee to lend (i.e., "backstop") if no other prepetition lenders participated in the new loans.  (*See* KeyBank Compl. ¶ 20; Fifth Third Compl. ¶ 20.)  All prepetition lenders had an opportunity to participate in the financing of the Original DIP New Money Loans on a *pro rata* basis.  They also received a significant benefit even if they elected not to participate in the additional financing: because their prepetition loans were refinanced with new postpetition financing, all lenders were protected from a plan of reorganization getting confirmed without their consent (i.e., "crammed down").  Plaintiffs did not participate in the new money financing. *See* Shamah Decl. Ex. B at 13:19–14:6 (Hr'g Tr. Excerpt, *In re Appvion, Inc.*, No. 17-12082 (Bankr. D. Del. Mar. 12, 2018)).

Following the bankruptcy court's approval of the Original DIP Agreement in an October 31, 2017 Final Order ("**Original DIP Final Order**") (*see* KeyBank Compl. Ex. A; Fifth Third Compl. Ex. A), the Prepetition Loan Facility was extinguished, and Appvion became party to a court-approved DIP financing loan with a principal balance of approximately $325 million.  *See generally* Shamah Decl. Ex. C (Original DIP Agreement).  Per the terms of the Original DIP Agreement, the Original DIP New Money Loans ranked *pari passu* with the Roll-Up Loans in priority of their liens in collateral, but the Original DIP New Money Loans ranked ahead of the Roll-Up Loans in priority of payment. (KeyBank Compl. ¶¶ 22, 27–28; Fifth Third Compl. ¶¶ 22, 26, 28); *see also* Shamah Decl. Ex. C § 8.02.  That is, even though the Original DIP New

---

converting all of the lender's prepetition debt to postpetition debt" (i.e., a "roll-up loan").
3 Collier on Bankr. ¶ 364.06[2] (16th ed. 2018).

[8] The "**DIP Franklin Lenders**" are Defendants Franklin Investors Securities Trust – Franklin Floating Rate Daily Access Fund; Franklin Floating Rate Master Trust – Franklin Floating Rate Master Series; Franklin Templeton Series II Funds – Franklin Floating Rate II Fund; Kansas Public Employees Retirement System; Franklin Floating Rate Master Trust – Franklin Lower Tier Floating Rate Fund; and Franklin Floating Rate Master Trust – Franklin Middle Tier Floating Rate Fund.

Money Loans and Roll-Up Loans were equal from a lien security perspective, the parties agreed that, in the event of a default by the debtor in the bankruptcy and exercise of remedies by a lender (or if the loans otherwise automatically became immediately due and payable), the Original DIP New Money Loans were senior to the Roll-Up Loans in payment priority and had to be repaid in full before the Roll-Up Loans would receive any recovery. (*See* Shamah Decl. Ex. C §§ 8.01, 8.02.) As with the Prepetition Loan Facility, the DIP Franklin Lenders held a majority of the debt outstanding under the Original DIP Agreement. *See id.* Ex. A at 54:11–55:7.

### B. Appvion's Default Under the Original DIP Agreement and Approval of the Amended DIP Agreement

By the end of 2017, Appvion defaulted under the Original DIP Agreement as a result of various business and economic circumstances not at issue here. *See id.* Ex. B at 11:12–17. To preserve Appvion's viability as a going concern, Appvion and certain Defendants negotiated a series of transactions whereby (i) the DIP Franklin Lenders would direct the Original DIP Agreement agent to waive the existing Original DIP Agreement defaults; (ii) the DIP Franklin Lenders would direct the Original DIP Agreement agent to be a stalking horse bidder in an auction for substantially all of Appvion's assets in a bankruptcy court-approved sale under Bankruptcy Code section 363; and (iii) the DIP Franklin Lenders would guarantee to fund an additional $15 million in new money loans (again, while providing other lenders an opportunity to participate in the new loans) to fund Appvion's ongoing operations through the closing of the sale. (KeyBank Compl. ¶¶ 39–41; Fifth Third Compl. ¶¶ 40–42.) The proposed stalking horse bid to acquire Appvion's assets was structured such that the $85 million of Original DIP New Money Loans would be assumed by the purchaser, and the $240 million in Roll-Up Loans would receive equity in the acquired company as part of a credit bid under Bankruptcy Code section 363(k). (KeyBank Compl. ¶ 41; Fifth Third Compl. ¶ 42.)

On February 8, 2018, Appvion filed a motion with the bankruptcy court seeking approval of (i) bidding procedures to govern the marketing and sale of Appvion's assets and (ii) the stalking horse bid. (KeyBank Compl. ¶ 41; Fifth Third Compl. ¶ 42.) Plaintiffs objected, arguing that the proposed stalking horse bid violated the Original DIP Agreement by prioritizing the Original DIP New Money Loans over the Roll-Up Loans. (KeyBank Compl. ¶ 43; Fifth Third Compl. ¶ 44.) To address these objections, Defendants proposed that, instead of the stalking horse purchaser assuming the Original DIP New Money Loans, those loans would be refinanced into a new $100 million loan facility (the "**New DIP Loan**") consisting of the $85 million in Original DIP New Money Loans and the additional $15 million in loans from the DIP Franklin Lenders. (KeyBank Compl. ¶¶ 45–46; Fifth Third Compl. ¶¶ 46–47.) Under this proposal, this $100 million in DIP financing loans constituted a new super-senior "priming" facility that would be secured by a lien senior to the lien securing the Roll-Up Loans, and the entire New DIP Loan would be assumed by the purchaser under the stalking horse bid. (KeyBank Compl. ¶ 46; Fifth Third Compl. ¶ 47.) To further address any concerns about unfair treatment, Plaintiffs were given a second opportunity to participate in the financing, which they again declined. Shamah Decl. Ex. B at 13:19–14:17. Rather, Plaintiffs objected to this proposal too, because it would also make the New DIP Loan senior to the Roll-Up Loans, which remain outstanding and are secured by a separate lien that is junior to the lien securing the New DIP Loan. *See id.* Ex. D at 5 (Obj. of KeyBank to Entry of Final Order on Mot. of Debtors for Entry of Interim and Final Orders, *In re Appvion, Inc.*, No. 17-12082 (Bankr. D. Del. Mar. 21, 2018) (Dkt. No. 596)); Ex. E at 5 (Obj. of Fifth Third to Entry of Final Order on Mot. of Debtors for Entry of Interim and Final Orders, *In re Appvion, Inc.*, No. 17-12082 (Bankr. D. Del. Mar. 21, 2018) (Dkt. No. 598)).

At hearings on March 12 and March 29, 2018, the bankruptcy court overruled Plaintiffs' objections and issued orders approving all of the relief Appvion needed to move its bankruptcy forward: the bidding procedures and the stalking horse bid, the interim and final orders authorizing the New DIP Loan, and amendments to the Original DIP Agreement that waived the existing defaults under the Original DIP Agreement and made the New DIP Loan a senior loan facility (hereinafter, the "**Amended DIP Agreement**").  *See generally id.* Ex. F (Final Order (I) Authorizing Debtors to (A) Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e), (B) Grant Senior Liens and Superpriority Administrative Expense Status; (II) Modifying Final Existing DIP Financing Order; and (III) Granting Related Relief, *In re Appvion, Inc.*, No. 17-12082 (Bankr. D. Del. Mar. 29, 2018) (Dkt. No. 625)).  The bankruptcy court also observed that the Franklin DIP Lenders' actions "actually . . . helps [KeyBank and Fifth Third] in their position" because it avoided an event of default and the possible liquidation of Appvion.  *Id.* Ex. B at 81:17–82:6.  Nonetheless, in light of Plaintiffs commencing these actions earlier that day, the Delaware bankruptcy court ordered that these actions would not be prejudiced by the order authorizing the New DIP Loan and Amended DIP Agreement, provided that "no claim or cause of action in the Litigations shall constitute a collateral attack on approval of the Senior DIP Facility, the Existing DIP Facility Documents, the Senior DIP Facility Documents, and the Final Existing DIP Order, all as amended."  *Id.* Ex. F at Rider A.

    **C.**    **This Litigation**

In these actions, commenced hours before the start of the March 29 hearing to approve the New DIP Loan on a final basis, Plaintiffs assert claims for breach of contract, breach of implied covenant of good faith and fair dealing, and tortious interference with contract related to the Original DIP Agreement.  Specifically, Plaintiffs claim that, by proposing and implementing

the New DIP Loan—including by waiving, consenting to amend, and amending parts of the Original DIP Agreement without KeyBank's and Fifth Third's consent—Defendants (1) breached several provisions of the Original DIP Agreement, including provisions on lien seniority, priming lien facilities, loan repayment, treatment of collateral, and material modifications of the agreement, (2) breached an implied covenant of good faith and fair dealing under that agreement, and (3) tortiously interfered with Plaintiffs' contractual rights under that agreement.  (*See* KeyBank Compl. ¶¶ 50–51, 71–91; Fifth Third Compl. ¶¶ 51–52, 72–92.) Plaintiffs claim that they will be harmed as a consequence of the bankruptcy court's orders and that Defendants' actions—even though they were approved by the Delaware bankruptcy court—constituted a breach of the covenant of good faith and fair dealing, as well as tortious interference with contract.  (*See* KeyBank Compl. ¶¶ 54, 57, 59, 61, 68; Fifth Third Compl. ¶¶ 55, 58, 60, 62, 69.)  They also seek a declaratory judgment that Defendants' conduct was prohibited by the Original DIP Agreement, the Roll-Up Loans should be treated the same as the Original DIP New Money Loans, and the DIP Franklin Lenders must share any payments on the Original DIP New Money Loans equally with Plaintiffs and other lenders as purportedly required under the Original DIP Agreement.  (KeyBank Compl. ¶¶ 75, 83, 90, 93–100; Fifth Third Compl. ¶¶ 76, 84, 91, 94–101.)

## ARGUMENT

This Court should transfer these actions to the United States District Court for the District of Delaware, from which they may be referred to the United States Bankruptcy Court for the District of Delaware, under 28 U.S.C. § 1412.  Section 1412 allows a district court to transfer a

case to another jurisdiction where the case could have been commenced, if transfer is "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.[9]

Under this standard, the Court should transfer these cases.[10] As shown below, venue is proper in the District of Delaware, as the case could have been commenced there and (1) venue transfer would promote both the interests of justice and be more convenient for the parties, and (2) transfer would further federal policy strongly favoring centralizing bankruptcy-related litigation.

## I. JURISDICTION AND VENUE ARE PROPER IN THE DISTRICT OF DELAWARE

These cases could have been initiated in Delaware because Appvion's bankruptcy proceedings are pending there. *See* 28 U.S.C. § 1409 ("[A] proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."). The Delaware District Court, like this Court, has subject matter jurisdiction because these actions "arise in" a case under title 11, "arise under" the Bankruptcy Code, and are "related to" a case under title 11. *See* 28 U.S.C. § 1334(b) (providing that federal courts have original jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11").

Specifically, federal bankruptcy jurisdiction exists because this proceeding "arises in" the bankruptcy proceedings—it is a core proceeding concerning a postpetition agreement with a

---

[9] Section § 1404(a) independently authorizes venue transfer in cases generally. 28 U.S.C. § 1404(a). The legal standard for transfer under section 1412 is substantially the same. *See Del. Trust Co. v. Wilmington Trust, N.A.*, 534 B.R. 500, 519 (S.D.N.Y. 2015) ("In determining whether to transfer under 28 U.S.C. § 1412, courts consider the same factors as under the general transfer provision, 28 U.S.C. § 1404(a).").

[10] This Court would transfer these cases to the District of Delaware. Under the District of Delaware's standing order of reference, the cases would automatically be referred to the Delaware bankruptcy court, where they would be docketed as cases related to Appvion's bankruptcy proceedings. *See* Amended Standing Order of Reference (D. Del. Feb. 29, 2012).

debtor-in-possession that would not exist but for the bankruptcy proceedings. *See, e.g.*, *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1400 (2d Cir. 1990) (holding that adjudication of post-petition contract claims "is an essential part of administering the estate"); *In re U.S. Lines, Inc.*, 197 F.3d 631, 637 (2d Cir. 1999) ("The bankruptcy court has core jurisdiction over claims arising from a contract formed post-petition under § 157(b)(2)(A)."); *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010) (finding malpractice claim would not exist but for bankruptcy proceedings). Further, this proceeding "arises under" the Bankruptcy Code because Plaintiffs purport to enforce substantive rights conferred upon them by the Bankruptcy Code. *See, e.g.*, *In re Housecraft Indus. USA, Inc.*, 310 F.3d 64, 70 (2d Cir. 2002) (cases seeking to enforce "substantive rights created by bankruptcy law "arise under" Bankruptcy Code). And there is little doubt that this case is "related to" the pending Appvion bankruptcy case, because it will conceivably affect the pending bankruptcy case by affecting the parties' recoveries in that case. *See In re Quigley Co., Inc.*, 676 F.3d 45, 53 (2d Cir. 2012) (holding that "related to" jurisdiction exists where action could have any "conceivable effect" on bankruptcy estate). As a result, these cases could have been commenced in federal court in Delaware.[11]

**II.   TRANSFER OF THESE ACTIONS TO THE DELAWARE BANKRUPTCY COURT IS IN THE INTERESTS OF JUSTICE**

"[T]he interests of justice are furthered when a case is transferred to a venue that would promote judicial economy." *Del. Trust Co. v. Wilmington Trust, N.A.*, 534 B.R. 500, 520 (S.D.N.Y. 2015); *JPMorgan Chase Bank, N.A. v. Coleman-Toll Ltd. P'ship*, 2009 WL 1457158, at *8 (S.D.N.Y. May 26, 2009). This Court has long held, in evaluating whether the interest of justice test is satisfied, that "'[t]he existence of a related action pending in the transferee court

---

[11] Defendants will address Plaintiffs' anticipated arguments against subject matter jurisdiction in greater detail when responding to Plaintiffs' motions to remand these cases to state court.

weighs heavily towards transfer.'" *Del. Trust*, 534 B.R. at 520 (quoting *Coleman-Toll Ltd.*, 2009 WL 1457158 at *8); *see also CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602, 608 (S.D.N.Y. 2008). A transfer in the interest of justice "is particularly appropriate when the related lawsuit 'involv[es] the same facts, transactions, or occurrences'" as the related proceedings because "[l]itigating related actions in the same tribunal fosters efficient case administration and avoids needless expense." *Del. Trust*, 534 B.R. at 520 (quoting *Coleman-Toll Ltd.*, 2009 WL 1457158, at *8) (first alteration in original); *see also Wyndham Assocs. v. Bintliff*, 398 F.2d. 614, 619 (2d Cir. 1968).

These considerations carry particular force where the related proceeding is a pending bankruptcy case, because there is "strong bankruptcy code policy" in favor of centralized litigation in the district where a related bankruptcy case is pending. *Del. Trust*, 534 B.R. at 521 (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)). Transferring this case to Delaware advances this policy and otherwise promotes judicial economy—thereby furthering the interests of justice—for two separate reasons.

*First*, the Delaware bankruptcy court is already familiar with the facts and issues presented here. That court has overseen Appvion's bankruptcy case for over seven months and has presided over numerous contested hearings where the parties to this case argued issues that are closely related to this dispute. That court's investment of time and energy in shepherding the Appvion bankruptcy proceedings, generally, and addressing many of the facts and issues presented in this dispute, specifically, is a "precious asset" that should not be squandered. *See Wyndham Assocs.*, 398 F.2d at 619–20 (finding transferee judge's experience with facts underlying case was a "precious asset, increasing in value with the passage of time, and which will undoubtedly lighten the burden of litigants and courts alike" (internal quotation marks

omitted)). Using that asset will ensure that these cases are "fairly, efficiently, and effectively resolved with minimal practical upset to the ongoing bankruptcy proceeding." *See Lothian Cassidy LLC v. Ransom*, 428 B.R. 555, 562 (E.D.N.Y. 2010) (granting transfer to bankruptcy venue would ensure "supervision by the court most familiar with, and with continuing administrative responsibility for [the] bankruptcy proceeding"). In addition, Plaintiffs' claims arise out of and relate to the Original DIP Agreement and New DIP Loan (governed by the Amended DIP Agreement) that were approved by the Delaware bankruptcy court under section 364 of the Bankruptcy Code. Their claims mimic the arguments raised in their objections to the New DIP Loan—i.e., that the New DIP Loan violated the Original DIP Agreement and will decrease Plaintiffs' recovery from Appvion's bankruptcy (to Defendants' benefit) by changing the amount and form of any recovery Plaintiffs may receive. Litigating these cases before the Delaware bankruptcy court, where briefing and argument has already occurred on the terms and effect of the New DIP Loan (including by Plaintiffs), would be far more efficient and economical than starting from scratch in this Court or in state court.

*Second*, this dispute will undoubtedly require interpretation of the bankruptcy court orders authorizing the New DIP Loan, a task that should be reserved to the Delaware bankruptcy court, which authored those orders. That court ordered that these actions were not prejudiced by its order authorizing the New DIP Loan and Amended DIP Agreement, but also provided that "no claim or cause of action in the Litigations shall constitute a collateral attack on approval of the Senior DIP Facility, the Existing DIP Facility Documents, the Senior DIP Facility Documents, and the Final Existing DIP Order, all as amended." Shamah Decl. Ex. F at Rider A. The Delaware bankruptcy court is best positioned to determine whether these actions are an impermissible collateral attack in violation of its order.

These cases closely resemble this Court's decision in *Delaware Trust*. That case involved an inter-lender dispute regarding the allocation of distributions to secured creditors from a pending bankruptcy case in the Delaware bankruptcy court. Plaintiff there, like KeyBank and Fifth Third, raised similar arguments in the bankruptcy case as were being advanced in collateral litigation commenced in New York. *See Del. Trust*, 534 B.R. 500. This Court transferred venue to the District of Delaware in the interest of justice, holding that the connections between the pending bankruptcy case and the issues raised in the litigation "strongly favor[ed] transferring this matter to the District of Delaware" for referral to the bankruptcy court because the action was "closely related to the ongoing bankruptcy proceedings" and could be "promptly adjudicated there by a judge already familiar with the facts, issues, and entities" involved. *Id.* at 520–21. The same result should follow here.

### III. LITIGATING THESE CASES IN DELAWARE IS MORE CONVENIENT FOR THE PARTIES

Venue transfer is also warranted because litigating this dispute in the Delaware bankruptcy court is more convenient for the parties. None of the parties here are incorporated in or have their principal offices or main headquarters in New York. (*See* KeyBank Compl. ¶¶ 4–12; Fifth Third Compl. ¶¶ 4–12.) Plaintiffs transparently chose to file suit in New York State because they wanted to evade the Delaware bankruptcy court, which has already rejected the arguments Plaintiffs raised in their objections to the New DIP Loan. *See* Shamah Decl. Ex. C § 11.14(b).[12] This forum is a total stranger to this matter. In contrast, the parties are deeply involved in the Appvion bankruptcy as creditors and are actively participating in those

---

[12] Section 11.14(b) provides: "The Borrower and each other loan party irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the bankruptcy court or, if the bankruptcy court does not have or abstains from jurisdiction, the courts of the State of New York sitting in New York County and [this Court] . . . , in any action or proceeding arising out of or relating to this agreement or any other loan document."

proceedings. *See Lothian Cassidy*, 428 B.R. at 562 ("Certainly, the transferee venue is familiar to many plaintiffs . . . for they are creditors in the . . . bankruptcy proceeding."). In short, the parties to this dispute are present and active in Delaware, not New York—reason enough alone to transfer venue to that court.[13]

In addition, the forum selection clause strongly favors, if not mandates, venue transfer. In the forum selection clause of the Original DIP Agreement (and the Amended DIP Agreement), the parties consented to exclusive jurisdiction in the Delaware bankruptcy court, if that court has jurisdiction and does not abstain, over "any action or proceeding arising out of or relating to" the Original DIP Agreement. Shamah Decl. Ex. C § 11.14(b). Because the Delaware bankruptcy court has jurisdiction over these actions (*see infra* pp. 10–11), "[t]here is a strong argument that venue must be laid in Delaware under the [Original DIP Agreement's] choice of forum clause." *See Winstar Holdings, LLC v. Blackstone Grp., L.P.*, 2007 WL 4323003, at *1, 6–7 (S.D.N.Y. Dec. 10, 2007) (granting transfer under similar 28 U.S.C. §§ 1404(a) and/or 1406 analysis where asset purchase agreement contained forum selection clause stating bankruptcy court would have exclusive jurisdiction to resolve "any dispute arising out of or related to the" agreement). The forum selection clause thus warrants transfer, particularly when paired with the strong preference for consolidating related actions in the same district and the congressional policy favoring centralized bankruptcy proceedings.

---

[13] While a plaintiff's choice of forum is a factor to consider in deciding whether to transfer venue, the Court should afford that choice "diminishing deference" when it is not the plaintiff's home forum and the choice is "motivated by tactical advantage." *Renaissance Cosmetics v. Dev. Specialists Inc.*, 277 B.R. 5, 18 (S.D.N.Y. 2002) (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 70 (2d Cir. 2001)). Both KeyBank and Fifth Third are based in Ohio, and no defendant is based in New York. Plaintiffs chose to file suit in a New York forum presumably to gain a tactical advantage by seeking to litigate this dispute outside the Delaware bankruptcy court's purview. The Court should therefore give little weight to Plaintiffs' choice of New York.

## CONCLUSION

This is a dispute between lenders about how agreements with a debtor-in-possession, and the bankruptcy court orders approving those agreements, should be enforced.  The resolution of this dispute will necessarily affect the related bankruptcy proceedings in which the parties are active participants.  There is no question that these cases could and should have been originally commenced in Delaware bankruptcy court or that it would be more efficient, more convenient for the parties, and further federal policy of centralizing bankruptcy proceedings if these cases were litigated in Delaware.

For these reasons and as explained in greater detail above, Defendants respectfully request that this Court transfer the present actions to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1412 for referral to the Delaware bankruptcy court.

Dated: New York, New York
       May 14, 2018

Respectfully submitted,

O'MELVENY & MYERS LLP

By: */s/ Peter Friedman*

Peter Friedman (*admitted pro hac vice*)
1625 Eye Street, NW
Washington, DC 20006
pfriedman@omm.com
Tel.:  (202) 383-5300
Fax:  (202) 383-5414

Daniel S. Shamah
Stephanie Drotar
7 Times Square
New York, NY 10036
dshamah@omm.com
sdrotar@omm.com
Tel.:  (212) 326-2000
Fax:  (212) 326-2061