UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KEYBANK NATIONAL ASSOCIATION,

Plaintiff,

-against-

FRANKLIN ADVISERS, INC.; FRANKLIN INVESTORS SECURITIES TRUST – FRANKLIN FLOATING RATE DAILY ACCESS FUND; FRANKLIN FLOATING RATE MASTER TRUST – FRANKLIN FLOATING RATE MASTER SERIES; FRANKLIN TEMPLETON SERIES II FUNDS – FRANKLIN FLOATING RATE II FUND; KANSAS PUBLIC EMPLOYEES RETIREMENT SYSTEM; FRANKLIN FLOATING RATE MASTER TRUST – FRANKLIN LOWER TIER FLOATING RATE FUND; FRANKLIN FLOATING RATE MASTER TRUST – FRANKLIN MIDDLE TIER FLOATING RATE FUND; AND FRANKLIN TEMPLETON SERIES II FUNDS – FRANKLIN UPPER TIER FLOATING RATE FUND,

Defendants.

Civil Action No. 1:18-CV-03755

**KEYBANK NATIONAL ASSOCIATION'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO REMAND**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................ 1
ARGUMENT ........................................ 2
I. THIS CASE MUST BE REMANDED TO THE NEW YORK STATE COURT BECAUSE THIS COURT DOES NOT HAVE JURISDICTION UNDER 28 U.S.C. § 1334(b) ........................................ 2
II. ALTERNATIVELY, THE COURT MUST ABSTAIN ........................................ 8
III. JOINDER TO OTHER MATTERS RAISED BY FIFTH THIRD BANK ........................................ 10
CONCLUSION ........................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Simpson*,
613 F.3d 346 (2d Cir. 2010)....................5, 6

*Capital Hill Grp. V. Pullsbury Winthrop Shaw Pittman, LLP*,
No. CIVA 07-1936 RCL, 2008 WL 2690731 (D.D.C. July 2, 2008), aff'd sub nom. *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485 (D.C. Cir. 2009) ....................9

*Gramercy Warehouse Funding I LLC v. Colfin JIH Funding LLC*,
No. 11 CIV. 9715 KBF, 2012 WL 75431, U.S. Dist. LEXIS 3244 (S.D.N.Y. Jan. 6, 2012)....................4

*JS Barkats PLLC v. Blue Sphere Corp.*,
No. 16-CV-8404 (RA), 2017 WL 2930935 (S.D.N.Y. July 10, 2017)....................2

*Langston Law Firm v. Mississippi*,
410 B.R. 150 (S.D.N.Y. 2008)....................7

*In re Leco Enterprises, Inc.*,
144 B.R. 244 (S.D.N.Y. 1992)....................6

*Louisville & Nashville R.R. Co. v. Mottley*,
211 U.S. 149 (1908)....................6

*Luciano v. Maggio*,
139 B.R. 572 (E.D.N.Y. 1992) ....................5

*In re Marcus Hook Dev. Park, Inc.*,
943 F.2d 261 (3d Cir. 1991)....................5

*In re McClelland*,
377 B.R. 446 (Bankr. S.D.N.Y. 2007), aff'd, 460 B.R. 397 (Bankr. S.D.N.Y. 2011) ....................9

*In re P.D.S. Dev. Corp.*,
103 B.R. 93 (Bankr. S.D.N.Y. 1989)....................2

*Porter v. NationsCredit Consumer Discount Co. (In re Porter)*,
295 B.R. 529 (Bankr. E.D. Pa. 2003) ....................5

*Winstar Holdings, LLC v. Blackstone Grp. L.P.*,
No. 07 CIV. 4634 (GEL), 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) ....................6, 7, 9

Plaintiff KeyBank National Association ("*KeyBank*"), by and through its undersigned counsel, Reed Smith LLP, files this reply in further support of its motion for an order remanding this action back to the Supreme Court of the State of New York – County of New York (the "New York State Court") or, in the alternative, abstaining from determining this action pursuant to 28 U.S.C. § 1334 (c)(1) or (2) [ECF No. 28, 31, 32] (the "Motion").[1]

**PRELIMINARY STATEMENT**

Defendants effectively ask this Court to impermissibly expand the scope of bankruptcy jurisdiction in order to pigeon-hole this state-law driven inter-lender dispute into the confines of the limited scope of federal court jurisdiction over bankruptcy matters. Defendants do so in an attempt to have this litigation transferred to the Bankruptcy Court—a venue that contravenes the express agreement among the parties which specified that inter-lender disputes would be adjudicated in New York. Contrary to the Defendants' wishes, the Bankruptcy Court lacks jurisdiction over the Complaint.[2] Simply put, the causes of action raised in the Complaint are not "related to" the Bankruptcy Cases because they will have no impact whatsoever upon the Bankruptcy Cases. Despite Defendants' reliance upon a misreading of an indemnification provision in various credit agreements, Appvion's bankruptcy estate has no indemnification obligations in connection with this matter, and the issues raised herein will not otherwise impact

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

[2] Despite Defendants' multiple statements to the contrary, the Bankruptcy Court has never actually ruled upon the issues asserted herein (if it had, presumably the Defendants would have raised collateral estoppel or res judicata). Indeed, issues related to those asserted in the Complaint were substantively entertained before the Bankruptcy Court only one time, in the context of a hearing to establish bidding procedures that were applicable to the sale of Appvion's assets. After hearing oral argument on the issues, the Bankruptcy Court simply determined that the issues raised were not issues that were required to be adjudicated in the context of a bidding procedures hearing and specifically held that its order was without prejudice to KeyBank's ability to assert these claims in the appropriate forum. See Dkt. No. 26 at Ex. B (Hrg. Tr. Mar. 12, 2018) at 83:16-20 ("To the extent that [KeyBank and Fifth Third] think that Franklin here has breached the credit agreement, *this order [approving the Second DIP Credit Agreement on an interim basis and approving bidding procedures in connection with the sale of Appvion] will be without prejudice for them to assert those claims in an appropriate forum, whether it's this or another one*.") (emphasis added). Thereafter, the parties agreed upon language that was inserted in subsequent Bankruptcy Court orders which reserved and preserved the claims set forth herein for determination in the appropriate forum.

the bankruptcy estate in any way. Because the claims are not "related to" the Bankruptcy Cases, the claims cannot possibly be within the Bankruptcy Court's "arising under" or "arising in" jurisdiction. That aside, the inter-lender state law claims asserted in the Complaint (i) cannot be viewed under any stretch of the imagination to assert causes of action grounded in the Bankruptcy Code and (ii) do not involve the administration of Appvion's bankruptcy case, as would be required for such claims to "arise under" the Bankruptcy Code. Likewise, the inter-lender state law claims asserted in the Complaint can—and currently do—exist outside of the Bankruptcy Cases and do not "arise in" the Bankruptcy Cases. Accordingly, this Action must be remanded to the New York State Court because it involves only claims between non-debtor parties that will not have any impact upon the Bankruptcy Cases.

Alternatively, to the extent that this Court determines that it can exercise jurisdiction over this matter pursuant to its "related to" jurisdiction, as conceded by Defendants, the Court must abstain from adjudicating this matter pursuant to 28 U.S.C. § 1334(c)(2). Should the Court determine that the Action is within its jurisdiction, the Court should abstain under 28 U.S.C. § 1334(c)(2) or equitably remand the Action under 28 U.S.C. § 1452(b) because the Action is isolated from and will have no impact upon the administration of the Bankruptcy Cases.

## ARGUMENT

### I. THIS CASE MUST BE REMANDED TO THE NEW YORK STATE COURT BECAUSE THIS COURT DOES NOT HAVE JURISDICTION UNDER 28 U.S.C. § 1334(b)

This Action must be remanded if it is not within this Court's "arising under", "arising in" or "related to" jurisdiction under 28 U.S.C. § 1334(b), and any doubts regarding the Court's jurisdiction must be resolved against removability. *E.g. JS Barkats PLLC v. Blue Sphere Corp.*, No. 16-CV-8404 (RA), 2017 WL 2930935, at *3 (S.D.N.Y. July 10, 2017). As set forth in the Motion, this Action is not within this Court's "related to" jurisdiction because it will have no

conceivable impact on the Bankruptcy Cases. This Action will not affect the amount of property available for distribution to Appvion's creditors or the allocation of *Appvion's* property among such creditors and will not alter Appvion's rights or liabilities. *In re P.D.S. Dev. Corp.*, 103 B.R. 93, 95 (Bankr. S.D.N.Y. 1989). Importantly, if the claims in this Action had any effect whatsoever on the Bankruptcy Cases, the Bankruptcy Court likely would have required such claims to be adjudicated in the Bankruptcy Cases prior to entry of the Second DIP Financing Order or the Sale Order, and would not have reserved the parties' rights to assert these claims in a separate forum. *See* Dkt. No. 26 at Ex. B (Hrg. Tr. Mar. 12, 2018) at 83:16-20 ("To the extent that [KeyBank and Fifth Third] think that Franklin here has breached the credit agreement, *this order [approving the Second DIP Credit Agreement on an interim basis and approving bidding procedures in connection with the sale of Appvion] will be without prejudice for them to assert those claims in an appropriate forum, whether it's this or another one*.") (emphasis added).

In their opposition, Defendants once again rely upon a partial reading of the indemnification clauses in the DIP Credit Agreement that ignores the lack of indemnification coverage over inter-lender disputes in order to manufacture "related to" jurisdiction. Whether or not the claims asserted in this Action involve alleged willful misconduct (which they most certainly do), by its very terms, the indemnification clause does not apply to inter-lender disputes like this one. The indemnification clause relied upon by Defendants (which is set forth at length in the Motion) applies only to claims asserted against a Lender "by any third party or by the Borrower or any other Loan Party[.]" Dkt. No. 26 at Ex. C, § 11.04; *id*. at §11.04(y) (indemnity for law suits only covers claims brought by any "third party" or any ""Group Member" – it does not cover causes of action brought by a fellow lender). The term "Loan Parties" is defined in the DIP Financing Order as "the Company and the Guarantors." *See* Dkt. No. 26 at Ex. C at n.3.

KeyBank is not a Borrower or a Loan Party, and therefore the indemnification provision could apply only if KeyBank were a "third party". KeyBank is a party to the DIP Credit Agreement and, therefore is not a "third party" to that agreement. KeyBank is included within the definition of "Roll-Up Lender" under the Second DIP Credit Agreement. Had that provision been intended to cover claims against Roll-Up Lenders, the parties would have specifically so provided.

Moreover, the indemnification provision also does not apply to claims that are "solely amongst Indemnitees and/or their Related Parties and do[] not involve an act or omission by" Appvion. *Id.* This Action solely concerns the Defendants' breaches of the DIP Credit Agreement in connection with proposing, initiating and implementing a new loan facility that breached the DIP Credit Agreement and proposing consideration in connection with the sale of Appvion which breaches the DIP Credit Agreement. The Action does not allege that Appvion caused any act or omission in connection with Defendants' breaches. The fact that the transactions involved Appvion does not justify the conclusion that this Action involves an "act or omission" of Appvion. In fact, reading the exception that broadly would result in the exception having no meaning, since Appvion would have the same relationship to virtually any claim that could be covered by the indemnification clause. Because the indemnification provisions could not possibly apply to this Action, they cannot form the basis of "related to" jurisdiction.

Finally, Defendants' argument that this Action seeks to affect Appvion's distributions in the Bankruptcy Cases is misplaced. As concerns Appvion's bankruptcy estate, the Administrative Agent's credit bid of the secured creditors' claims "fully and finally satisfied" those claims against the Debtors. Dkt. No. 31 at Ex. C (Plan), § VII(A)(1)(c). This Action involves claims against the Defendants – it does not involve any claims against Appvion seeking a re-distribution. In sum, KeyBank's claims against Defendants will have absolutely no impact

upon Appvion's bankruptcy estate. *See Gramercy Warehouse Funding I LLC v. Colfin JIH Funding LLC*, No. 11 CIV. 9715 KBF, 2012 WL 75431, at *2-*3, U.S. Dist. LEXIS 3244 (S.D.N.Y. Jan. 6, 2012). Because this Action is not at least "related to" the Bankruptcy Cases, it "cannot possibly be a core proceeding" (i.e. a proceeding within the Court's "arising under" or "arising in" jurisdiction) and must be remanded. *Porter v. NationsCredit Consumer Discount Co. (In re Porter)*, 295 B.R. 529, 537-38 (Bankr. E.D. Pa. 2003) ("The [*Marcus Hook*] court held (agreeing with other circuit courts) that, when considering whether a bankruptcy court has the power to determine a dispute, a court need only decide whether the proceeding 'is at least 'related to' the bankruptcy.' If core proceedings could be unrelated to a bankruptcy case, the jurisdictional question could only be resolved by analyzing both aspects of the classification issue. Thus, the court in *Marcus Hook* understood that a proceeding 'not related' to the bankruptcy case cannot possibly be a core proceeding.") (citing *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 264 (3d Cir. 1991)).

While the lack of "related to" jurisdiction alone should end the inquiry, this Action is also outside of the Court's "arising under" and "arising in" jurisdiction. To "arise under" Title 11, a civil proceeding "must either be created by title 11 or involve administration of the estate." *Luciano v. Maggio*, 139 B.R. 572, 575 (E.D.N.Y. 1992). The case cited by Defendants supporting their broad interpretation of "arising under" jurisdiction, though analyzing the scope of "core" jurisdiction generally, was specifically focused upon "arising in" jurisdiction, not "arising under" jurisdiction. *Baker v. Simpson*, 613 F.3d 346, 349 (2d Cir. 2010) ("We find that the bankruptcy court's exercise of its "arising in" jurisdiction, as set forth in 28 U.S.C. § 1334(b), was proper and affirm"). As stated in another case cited by Defendants:

> Simply put, plaintiffs' causes of action are based on state tort law, and rest on familiar common-law principles prohibiting fraud and misrepresentation. No

> proposition of bankruptcy law must be established for plaintiffs to prevail, and no provision of the bankruptcy code is implicated in their allegations. The causes of action asserted in the complaint are in no sense 'created by' title 11 of the United States Code.

*Winstar Holdings, LLC v. Blackstone Grp. L.P.*, No. 07 CIV. 4634 (GEL), 2007 WL 4323003, at *2 (S.D.N.Y. Dec. 10, 2007). Here, like the *Winstar* case, the state law causes of action asserted in the Complaint were neither "created by title 11 [n]or involve administration of the estate" and do not raise disputes or issues *under* section 364 (or any other section) of the Bankruptcy Code. Under Defendants' reading, almost any dispute even tangentially related to a debtor-in-possession financing transaction would "arise under" the Bankruptcy Code. Tellingly, Defendants have pointed to no case standing for such a proposition because such an expansion of "arising under" jurisdiction is not supported by the plain language of the Bankruptcy Code or applicable case law, and in fact, one case cited by Defendants clearly goes against such proposition. *Id.* at *2 ("It may be that provisions of the APA and of the Bankruptcy Court's order approving it will be relevant to the outcome of the case. However, as the Supreme Court held in *Mottley* in the context of general federal question jurisdiction, '[a]lthough such allegations show that very likely, in the course of the litigation, a question under [bankruptcy law] would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under [title 11].") (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)).

Likewise, this Action does not "arise in" the Bankruptcy Cases because (i) it does not involve a matter "depend[ent] upon the application or construction of bankruptcy law as expressed in Title 11," *In re Leco Enterprises, Inc.*, 144 B.R. 244, 248 (S.D.N.Y. 1992), and (ii) the inter-lender issues raised in this Action could easily "exist[] outside of the bankruptcy.'" *Baker*, 613 F.3d at 350–51. At its core, the Action seeks a determination of the parties' respective rights under the DIP Credit Agreement and applicable state law and has no impact

upon Appvion, any of Appvion's property or rights or the distribution of any estate assets to Appvion's creditors. Defendants suggest that KeyBank's routine claims under the DIP Credit Agreement fall within the Court's "arising in" jurisdiction simply because they involve an agreement that was approved by the Bankruptcy Court, despite the fact that the claims have no relationship to the ongoing bankruptcy case and are not dependent upon the application or construction of bankruptcy law.[3] As noted in a case cited by Defendants when a nearly identical argument was raised:

> Defendants argue that [the 'arising in'] standard is met, pointing out that had [the debtor] not been in bankruptcy, the sale would never have taken place, the alleged misrepresentations would never have occurred, and so this action would have no existence absent the bankruptcy…. This argument may be somewhat oversimplified. The courts and commentators using the 'no existence outside of the bankruptcy' formulation seem to be referring to proceedings that by their nature cannot exist outside of bankruptcy, and not merely to actions that, as a factual matter, have their origins in events occurring during a bankruptcy proceeding.
>
> ***
>
> Plaintiffs here sue for fraud. Such a claim is not one that 'by its very nature ... can only be brought in a bankruptcy action.' Rather, it is a garden-variety common-law claim that most usually is brought outside of bankruptcy.

*Winstar Holdings, LLC,* 2007 WL 4323003, at *3-4.[4] *See also Langston Law Firm v. Mississippi,* 410 B.R. 150 (S.D.N.Y. 2008) ("While it is true that this dispute originates in the Debtors' bankruptcy proceeding and that it would not have arisen had the

[3] Defendants' reading of "arising in" jurisdiction would result in an expansion of "arising in" jurisdiction to indefinitely encompass any agreement subject to a bankruptcy court order, no matter how tangential or remote the agreement or issues are to a bankruptcy proceeding. For example, under section 365 of the Bankruptcy Code, a debtor can assume and assign certain executory contracts and unexpired leases that could not otherwise be assigned outside of bankruptcy. Under Defendants' reading of "arising in" jurisdiction, because the Bankruptcy Court blessed the assignment and the contracts could not have been assigned outside of bankruptcy, all future disputes between the parties to the assigned contract (i.e. non-debtors) would be within the Court's "arising in" jurisdiction, despite the fact that such disputes have no relationship to the bankruptcy proceedings whatsoever. This is clearly not what Congress intended.

[4] The *Winstar* court ultimately found that the causes of action asserted in that case were within the "arising in" jurisdiction of the court solely because they involved claims regarding the conduct of professionals involved in the administration of the bankruptcy estate. This Action asserts no such claims and, therefore, involves simple garden-variety state law claims that can—and should— be determined in the state court.

bankruptcy not occurred, appellant is incorrect that this action, by its nature, could only be brought in bankruptcy court. Rather, the parties could have brought this dispute, or any dispute relating to the payment of attorneys' fees in a settlement agreement, in any court. Moreover, there is no evidence that the dispute… will impact the administration of the estate. The resolution of the action will not affect the Debtors, …. The Debtors and the creditors have no interest in [the outcome of the litigation]."). Simply, "arising in" jurisdiction is intended to encompass matters that actually involve the application or construction of bankruptcy law, which this Action does not. The claims in the Action relate to the distribution of property of AHC, a non-debtor, that will have absolutely no effect on the Bankruptcy Cases. Because the claims asserted in the Complaint do not involve the application or construction of bankruptcy law and could—and currently do—exist outside of a bankruptcy case, the bankruptcy court does not have "arising in" jurisdiction over the claims. Accordingly, the Action must be remanded.

## II. ALTERNATIVELY, THE COURT MUST ABSTAIN

This Action does not fall within the scope of this Court's limited jurisdiction under 28 U.S.C. § 1334(b). If the Court nevertheless determines it can exercise jurisdiction over this matter under the Court's "related to" jurisdiction pursuant to 28 U.S.C. § 1334(b), the Defendants conceded that this Court must abstain from adjudicating this matter pursuant to 28 U.S.C. § 1334(c)(2). *See* Dkt. No. 33, 14 n.7. Alternatively, if the Court determines that the Action is otherwise within its jurisdiction, the Court should abstain pursuant to 28 U.S.C. § 1334(c)(1) or equitably remand the Action to the New York State Court under 28 U.S.C. § 1452(b), because consideration of the Abstention Factors and the Remand Factors weighs in favor of abstention and equitable remand. As detailed in the Motion, abstention will not affect the administration of the Bankruptcy Cases, which will soon be concluded whether or not the

Action is resolved, and the New York State Court can efficiently determine the state law issues raised in the Action. The cases cited by the Defendant all involve claims relating to purported misconduct of professionals retained by the bankruptcy estate, which is simply not the case here. *See Capital Hill Grp. V. Pullsbury Winthrop Shaw Pittman, LLP*, No. CIVA 07-1936 RCL, 2008 WL 2690731, at *1 (D.D.C. July 2, 2008), aff'd sub nom. *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485 (D.C. Cir. 2009) (involving malpractice action asserted against counsel relating to representation during bankruptcy proceedings); *Winstar Holdings, LLC v. Blackstone Grp. L.P.*, No. 07 CIV. 4634 (GEL), 2007 WL 4323003, at *1 (S.D.N.Y. Dec. 10, 2007) (involving claims against financial advisor relating to alleged fraudulent inducement to enter in to an asset purchase agreement with the debtor); *In re McClelland*, 377 B.R. 446 (Bankr. S.D.N.Y. 2007), aff'd, 460 B.R. 397 (Bankr. S.D.N.Y. 2011) (malpractice claim asserted against appraiser retained during bankruptcy case). Likewise, because this case is in its infancy, interests of judicial economy do not particularly favor the Bankruptcy Court over the New York State Court. Although the Bankruptcy Court is familiar with the agreements at issue in the Action,[5] the Bankruptcy Court certainly does not have those agreements committed to memory and would need to review and analyze the respective agreements in the same level of detail as would any other court adjudicating the issues. In asserting that KeyBank is simply forum shopping, Defendants once again ask this Court to ignore the fact that KeyBank commenced the Action in the very forum agreed to among KeyBank and the Defendants in the DIP Credit Agreement. *See* Dkt. No. 26 at Ex. C (DIP Credit Agreement), § 11.14(b). Rather, it is Defendants who are forum shopping by asking the

---

[5] The statement by the Bankruptcy Court that it is "well familiar with the issues that are involved in this case, having lived with them both in the courtroom and in chambers" was made by the Bankruptcy Court in reference to its consideration of a settlement that had nothing to do with the issues or matters raised in the Action. *See* Dkt. No. 34 at Ex. G, at 48-50.

Court to ignore the parties' agreement upon a forum. Based upon the foregoing, should the Court determine that it has jurisdiction over the Action, it should equitably remand or abstain from determining the Action.

## III. JOINDER TO OTHER MATTERS RAISED BY FIFTH THIRD BANK

To the extent not asserted or raised in this Memorandum or the Motion, KeyBank hereby joins in and adopts the arguments raised by Fifth Third in the reply brief filed by Fifth Third on the date hereof to apply (mutatis mutandis, as applicable, to this Action) as further arguments in support of KeyBank's Motion.

## CONCLUSION

For the foregoing reasons and those set forth in the Motion, KeyBank respectfully requests that this Court grant the Remand Motion or abstain from hearing the claims in the Action, and grant KeyBank such other relief as is appropriate.

New York, New York

Dated: July 16, 2018

Respectfully submitted,

**REED SMITH LLP**

By: /s/ Jonathan Gordon
Jonathan P. Gordon
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
E-mail: Jonathan.Gordon@reedsmith.com

- and –

Peter S. Clark, Esquire
Reed Smith LLP
Three Logan Square, Suite 3100
1717 Arch Street
Philadelphia, PA 19103-7301
Telephone: (215) 851-8100
E-mail: pclark@reedsmith.com

*Attorneys for Plaintiff KeyBank National Association*

**CERTIFICATE OF SERVICE**

I, Jonathan Gordon, hereby certify that on July 16, 2018, I caused to be served on all counsel of record, electronically via the Court's electronic filing system, a true and correct copy of KeyBank National Association's Reply Memorandum of Law in Further Support of Its Motion to Remand.

/s/ *Jonathan Gordon*
Jonathan Gordon